UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TINO EDWARDS, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| | ) Case No. |
| | ) |
| MAGNA POWERTRAIN OF AMERICA, INC. | ) |
| | ) |
| | ) |
| *Defendant*. | ) |

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Comes now the Plaintiff, Tino Edwards, by counsel, and for his Complaint for Damages states:

## PARTIES

1. Plaintiff, Tino Edwards, is a citizen of the United States and a resident of the State of Indiana. Tino currently resides in Muncie, Indiana.

2. Defendant, Magna Powertrain of America, Inc., is a Michigan corporation with its principal place of business in Troy, Michigan.

## JURISDICTION AND VENUE

3. Tino brings his Count I under Title 7 of the Civil Rights Act and his Count II under the Family Medical Leave Act.

4. This Court has federal question jurisdiction over Count I and Count II pursuant to 28 U.S.C. § 1331.

5. Tino brings his Count III under Indiana law. Counts III is premised on the same facts and circumstances on which Count I and Count II are premised. This Court has supplemental jurisdiction over Count III pursuant to 28 U.S.C. § 1367.

6. This Court is also a proper venue to bring this action pursuant to 28 U.S. Code § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in the Southern District of Indiana.

## ADMINISTRATIVE

7. Tino filed a claim with the EEOC against Magna and received a right to sue letter dated November 30, 2021.

## FACTS

8. Tino, who is an African American male, was an employee of Magna from approximately March 22, 2018 through April 28, 2021.

9. Magna employs more than 50 employees.

10. Tino worked in Magna's Muncie, Indiana facility.

11. Prior to March, 2021, Tino was a model employee with no disciplinary history.

12. Prior to March, 2021, Tino received regular pay raises and was promoted.

13. On February 4, 2021 Tino began a romantic relationship with a white, female co-worker named Brooklyn Meyer ("Meyer").

14. While Tino and Meyer were co-workers they were not in the same role and worked on different 'teams' within Magna's operation.

15. Tino was not in a supervisory role over Meyer and had no influence or input regarding assignment, promotion, or discipline of Meyer.

16. Magna does not have a written policy prohibiting employees from entering into relationships with other employees and relationships between employees are tolerated by Magna.

17. Tino's relationship with Meyer was made public on February 14, 2021, when Meyer announced the relationship on social media.

18. On February 18, 2021 an African American male co-worker of Tino's named Melvin Bryant, ("Bryant") made comments of a sexual nature to Tino about Meyer.

19. Tino reported the incident to a human resources employee named Stacy Olsen ("Olsen").

20. Olsen informed Tino that he should not be dating Meyer.

21. Within a week of the incident with Bryant, Tino was the subject of aggressive behavior from Meyer's supervisor, Gregg Pickett ("Pickett") and another employee named Clint Priddy, ("Priddy").

22. Pickett had previously been involved in a relationship with Meyer.

23. Pickett and Priddy attempted to run over Tino with a forklift.

24. Picket and Priddy spread rumors that Tino and Meyer were having sexual encounters on the job.

25. On March 3, 2021, Tino reported the behavior of Pickett and Priddy to human resources officer, Sherry Gossett ("Gossett").

26. On March 4, 2021, Pickett, who is in a supervisory role over both Meyer and Tino, drafted a disciplinary action against Tino accusing Tino of multiple incidents including walking in a "crush zone," and being in the way of the forklift that Pickett and Priddy used to try to run over Tino, as well as a disciplinary form directing Tino not to have any further contact with Meyer.

27. Magna maintained video cameras of the entire work area where the alleged incidents were supposed to have occurred.

28. Neither Magna nor Pickett were willing or able to corroborate Pickett's allegations with video when Tino asked that he be shown the alleged incidents.

29. Tino refused to sign the written disciplinary forms admitting the allegations.

30. Tino was told by Pickett that Tino would not to be permitted to return to work until he was ready to sign the admissions.

31. Tino signed the disciplinary forms to try to avoid losing his job.

32. Tino reported the incident to Gossett in human resources who crossed-out Tino's signatures on the disciplinary forms after learning that Tino had signed the forms under duress.

33. Gossett informed Tino that the disciplinary forms would remain in Tino's employee file regardless of his unwillingness to sign them.

34. Tino again asked to be shown the video footage but was told by Gossett that an allegation from Pickett must be true.

35. Gossett further instructed Tino not to pursue the matter any further.

36. On or about March 11, 2021, Meyer came to Tino's work area and asked if he had been permitted to see the video footage.

37. Olsen, from human resources saw Meyer talking to Tino and asked what the two were discussing.

38. Tino informed Olsen that he still had not been permitted to see any video footage of the alleged incidents that formed the basis of Pickett's allegations and that he was upset that the disciplinary write-ups were in his file based solely on Pickett's word.

39. Olsen reported the incident to Gossett and Gossett gave Tino a "final" warning prior to termination for not accepting guilt without any corroboration.

40. On March 14, 2021, Tino was called to the human resources office by Gossett to discuss Tino's complaint regarding Melvin Bryant's sexually suggestive comments to Tino about Meyer.

41. The meeting was attended by Tino, Melvin Bryant, Gossett, and three supervisors named Steve Wilcox, Gary Moles, and Chad Green.

42. During the meeting Wilcox informed Tino that Tino was on a "short rope" because nobody liked Tino.

43. Gossett asked Tino if he wanted to fight Melvin Bryant, and when Tino indicated that he did not, Gossett asked Tino, "Why? Are you afraid of him?"

44. On March 15, 2021, Tino was demoted from his position as a "Lead."

45. On March 18, 2021, Tino began seeking mental health treatment because of the stress and anxiety that the workplace harassment was causing him.

46. Tino filed the appropriate paperwork with Magna to take leave under the Family Medical Leave Act and he pursued an in-patient course of treatment at Muse Treatment Center in Los Angeles, California that was covered by his insurance.

47. Tino was prescribed medicine for anxiety which he still takes.

48. Tino remains under his physician's care and continues to take the anti-anxiety medicine as prescribed by his physician.

49. Tino returned to work at Magna on April 22, 2021.

50. Upon his return to work, Tino was not returned to his normal job. Instead, Tino was told to stand in a corner and stay out of the way.

51. Magna also decreased Tino's rate of pay upon returning to work.

52. On April 28, 2021, after spending a week standing in a corner, Tino was terminated.

53. Tino was informed that his termination was for breaking company policy, but he was not told what policy he was alleged to have broken.

## COUNT I
## VIOLATION OF TITLE 7 OF THE CIVIL RIGHTS ACT

54. Tino incorporates paragraphs 1-53 herein.

55. Tino as an African American is a member of a protected class.

56. Tino was qualified for his job and met or exceeded Magna's performance standards.

57. Magna's disapproval of Tino dating a white co-worker was Magna's actual motivation for its harassment, demotion, and termination of Tino.

## COUNT II
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

58. Tino incorporates paragraphs 1-53 herein.

59. Tino was an FMLA eligible employee.

60. Tino exercised his right to take FMLA leave and followed all appropriate procedures to do so.

61. Upon returning to work, Magna failed to restore Tino to an equivalent job and ultimately terminated Tino without cause.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

62. Tino incorporates paragraphs 1-53 herein.

63. Magna's racially motivated harassment, demotion, and termination of Tino constituted extreme and outrageous conduct.

64. Magna desired to cause Tino severe emotional distress in order to pressure him to end his relationship with Meyer or quit employment with Magna.

65. Magna's conduct did in fact cause Tino severe emotional distress such that he required in-patient treatment and remains under the care of a physician.

## **JURY DEMAND**

Tino hereby demands trial by jury on all issues triable to a jury.

WHEREFORE, Tino Edwards respectfully requests that the Court: grant judgment in favor of Plaintiff, and against the Defendant; award Plaintiff compensatory and punitive damages; award Plaintiff his reasonable costs and attorneys' fees; and grant all other appropriate relief.

Respectfully submitted,

/s/ Craig C. Siebe
Craig C. Siebe, 35363-49
NICKLOY, ALBRIGHT & GORDON, LLP
5540 Pebble Village Ln., Ste. 300
Noblesville, Indiana 46062
Ph. 317-773-3030
Fx: 317-219-0545
craig@nickloylaw.com